**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norma Duran,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-23-00981-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Norma Duran's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed. (Docs. 12, 16, 17), and the Court now rules.

**I.   BACKGROUND**

The issues presented in this appeal are:

1. Did the ALJ support her rejection of Plaintiff's symptom testimony with specific, clear, and convincing reasons supported by substantial evidence?
2. Did the ALJ properly conduct the supportability and consistency analysis for the medical opinions of Dr. Gordon and Dr. Perry, and did the ALJ support her rejection of these medical opinions with substantial evidence?

(Doc. 12 at 1–2).[1]

---

[1] The Court has reordered and rephrased Plaintiff's issues on appeal.

### A. Factual Overview

Plaintiff was fifty-one years old at the time of her alleged disability onset date of October 11, 2019. (Doc. 8-7 at 2). She has a tenth-grade education and reports past work as a cake decorator and cashier/checker. (Doc. 12 at 3). On December 6, 2019, and January 6, 2020, Plaintiff filed applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits, respectively. (*Id.* at 2). Plaintiff alleged that she suffers from osteoarthrosis, degenerative disc disease, obesity, left carpal tunnel syndrome, a bilateral shoulder impairment, a left knee impairment, tennis elbow, heel spurs, a spine blockage, and depression. (Doc. 8-3 at 35–36). Plaintiff's claims were denied initially and upon reconsideration by the SSA. (Doc. 12 at 2). Plaintiff requested a hearing before an ALJ, which was granted and held via telephone on February 1, 2022. (*Id.*) The ALJ issued an unfavorable decision on March 15, 2022. (*Id.*) In her decision, the ALJ found that based on Plaintiff's December 6, 2019, and January 6, 2020, social security applications Plaintiff has not been disabled—as defined in the Social Security Act—from October 11, 2019, through the date of the decision. (Doc. 8-3 at 53). The SSA Appeals Council denied a request for review of the ALJ's decision and adopted that decision as the SSA's final decision. (Doc. 12 at 2). Plaintiff then sought review in this Court. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will

proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since October 11, 2019, the alleged onset date." (Doc. 8-3 at 35).

At step two, the ALJ determined that the following impairments were "severe": osteoarthrosis, degenerative disc disease, obesity, left carpal tunnel syndrome, a bilateral shoulder impairment, and a left knee impairment. (*Id.*) The ALJ found that Plaintiff's severe impairments "impose more than minimal limitations on the claimant's ability to perform basic work-related activities." (*Id.*) The ALJ also considered Plaintiff's claimed impairments of tennis elbow, heel spurs, and cervical spine blockage, but reasoned that "these impairments are controlled by compliant use of medication, assistive devices, or surgical intervention, and ongoing medical management." (*Id.*) Thus, considered both individually and in combination these impairments "do not cause more than minimal functional limitations with her other impairments and are therefore found to be non-severe." (*Id.*) The ALJ analyzed Plaintiff's claimed mental impairment of depression under the four broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. (*Id.*) She found that Plaintiff's "medically determinable mental impairments cause no more than "mild" limitation in any of the four functional areas, [and thus] the undersigned finds them to be non-severe." (*Id.* at 39). Additionally, the ALJ explained that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." (*Id.*)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 39–40). The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) "except she can lift-carry a maximum of 5 pounds with the left nondominant upper extremity, can occasionally crawl and climb ladders, ropes, and scaffolds, and she can frequently engage in overhead reaching bilaterally." (*Id.* at 40).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a cake decorator and cashier/checker, reasoning that "[t]his work does not require the performance of work-related activities precluded by the [Plaintiff]'s residual functioning capacity." (*Id.* at 52). Accordingly, the ALJ found that Plaintiff has not been under a disability—as defined in the Social Security Act—from October 11, 2019, through the date of the decision. (*Id.* at 53).

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ

provides in the disability determination; it "may not affirm the ALJ on a ground upon which [she] did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

### A. Plaintiff's Symptom Testimony

First, Plaintiff asserts that the ALJ "committed materially harmful error by rejecting [Plaintiff]'s symptoms testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole . . . ." (Doc. 12 at 14). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Doc. 8-3 at 51).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints."

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

To assess credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Plaintiff contends that the ALJ summarized some of Plaintiff's testimony, but "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff]'s symptom testimony." (Doc. 12 at 15). Defendant responds that the ALJ "cited specific, clear, and convincing examples that contrasted with Plaintiff's claims." (Doc. 16 at 10).

In discussing Plaintiff's testimony and giving reasons to discount Plaintiff's physical symptom testimony, the ALJ stated:

> The claimant testified she underwent left knee surgery in February 2021 however visits contained in exhibit 39F revealed the claimant had normal use of the lower extremities. A note from April 1, 2021, at Exhibit 39F/159, was unremarkable with her back showing good ROM, no tenderness, negative straight leg raises, and the ability to walk on her heels and toes without issues. There was no pain in the hip with flexion and extension rotation of the lower extremities. Faber's test was negative but elicited some back pain with this movement. She had no focal neurological deficits and strength was full at 5/5 in the lower extremities. Sensation was equal and intact in the bilateral lower extremities. The claimant testified that "once in a while" [she] takes the pain medication Tramadol but her daily medications were ibuprofen and Fluxotine for depression. As for her alleged carpal tunnel syndrome, at the hearing, the claimant testified that she has no problems with her right dominant hand but does experience numbness and weakness in her left hand. Limitations are contained in the residual function capacity assessed to account for this testimony. She claimant [sic] reported she can do dishes, cook and do laundry. She drives three times a week, which would involve the use of her hands. She stated she donates plasma several days a week. (Hearing testimony). It was noted during a visit in January 2020, the claimant reported spending several days the week prior backing [sic] cupcakes and a cake for a wedding. (Exhibit 39F/79).

(Doc. 8-3 at 51–52).

In her analysis, the ALJ discounted Plaintiff's symptom testimony concerning her left leg because medical records associated with her lower extremities tended to show she had normal use of her left leg following her surgery in February 2021. Indeed, the Court's review of Exhibit 39F confirms that Plaintiff's doctors reported normal lower extremity function in the months following her knee surgery and she did not complain of ongoing pain. Plaintiff's improvement highlighted by the ALJ constitutes a specific, clear, and convincing reason supported by substantial evidence to discredit Plaintiff's subjective symptom testimony regarding her knee pain. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to discount Plaintiff's testimony regarding symptom severity)); *see also Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *2–3 (D. Ariz. Sept. 28, 2020) (affirming the ALJ's discounting of Plaintiff's testimony, in part, because Plaintiff's conditions improved with treatment).

The ALJ also partially discounted Plaintiff's symptom testimony related to her alleged carpal tunnel syndrome. Plaintiff asserts *Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001), holds that an ALJ must show "a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations." However, Plaintiff misinterprets the Ninth Circuit's language in the case. In *Vertigan*, the court does not use the language "typical day" as asserted by Plaintiff. It quotes another Ninth Circuit case to say that if a claimant "is able to spend a *substantial* part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Id.* (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). The plaintiff in *Vertigan* was engaging in activities such as walking and swimming which the court found a claimant could reasonably do for therapeutic reasons. *Id.* at 1050. These activities, the court reasoned, "are not necessarily transferable to the work setting with

regard to the impact of pain." *Id.* In contrast, here Plaintiff engaged in baking cupcakes and a cake for a wedding—precisely her former work. The ALJ's consideration of Plaintiff's daily activities to be inconsistent with her alleged symptoms constitutes specific, clear, and convincing reasons supported by substantial evidence to partially discredit Plaintiff's symptom testimony.

As for Plaintiff's mental health symptom testimony, the ALJ stated:

> A mental health note from July 1, 2020, noted the claimant continued with remission of symptoms. She had no new concerns or questions. Overall, there was an improvement in depression and anxiety with a decrease in severity of symptoms. She presented as calm, cooperative, and logical and linear in her thought processes with no acute DTS/DTO behavior or statements. She did not appear to be under the influence of alcohol or illicit substances at the time of the assessment. She was goal and future oriented to participate in treatment. Her insight and judgement were intact. (Exhibit 25F/67, 71). During a visit on July 29, 2020, her depression and anxiety were still under good control. The claimant denied symptoms of depression, mania, psychosis, and anxiety. (Exhibit 25F/83, 87). The claimant was noted to have been psychiatrically hospitalized from in June 2021 for three days due to a "suicide attempt" (Exhibit 35F). However, at the hearing, the claimant denied that was the case and indicated she just wanted to sleep. She testified she had not seen a counselor for mental health treatment since July 2021. (Hearing testimony).

(Doc. 8-3 at 52). The ALJ properly pointed out that Plaintiff did not consistently pursue treatment for mental health symptoms and made inconsistent statements regarding her alleged mental health symptoms. These are both specific, clear, and convincing reasons supported by substantial evidence to discount her symptom testimony. *See Ghanim*, 763 F.3d at 1163. Thus, the ALJ did not err.

### B.     Medical Opinions

Plaintiff next argues that the ALJ erred by rejecting the assessments from Dr. Gordan and Dr. Perry "without providing sufficient explanation that included a rational interpretation of [the] record supported by substantial evidence" and the ALJ failed "to explain . . . the supportability and consistency factors under the [SSA]'s regulations for evaluation of medical source opinions." (Doc. 12 at 10).

As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence. *See* 20 C.F.R. § 404.1520c. According to the new regulations, the ALJ should "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Instead, the ALJ considers the following factors when considering a particular medical opinion in a case: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The most important of these factors are supportability and consistency. *Id.* § 404.1520c(a). The ALJ should "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinion or prior administrative medical findings in [a] determination or decision." *Id.* § 404.1520c(b)(2). An ALJ will "articulate how [he or she] considered the medical opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.* § 404.1520c(a) and (b)(1).

Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

### i. Dr. Gordon

Plaintiff argues that the ALJ erred in rejecting Dr. Gordon's opinion because the ALJ "did not sufficiently explain what in [Dr. Gordon's] treatment records was inconsistent or failed to support" Dr. Gordon's findings. (Doc. 12 at 12). Plaintiff also states that the ALJ ignored findings consistent with the assessed limitations of Dr. Gordon. (*Id.*)

Defendant responds that the ALJ sufficiently pointed out that Dr. Gordon's own

1  treatment notes were at odds with her opinion that Plaintiff has significant physical
2  limitations. (Doc. 16 at 7). Defendant also responds to Plaintiff's assertion that the ALJ
3  ignored findings that were consistent with the assessed limitations by stating that one
4  finding purportedly "consistent" with Dr. Gordon's findings is from outside Plaintiff's
5  claimed disability period, and the other does nothing to bolster Dr. Gordon's opinion. (*Id.*
6  at 7–8).

The ALJ conducted the following analysis pertaining to Dr. Gordon's opinion:

> Alanna Gordon, D.O. completed a medical assessment of ability to perform physical work related activities on July 20, 2020. She opined that the claimant's impairments precluded an eight-hour workday. She could lift and carry less than 10 pounds; stand and walk for less than two hours and sit for less than two hours in an eight-hour workday. She has frozen shoulder, arthritis of the knee and lower back, cervical spinal stenosis, headaches, left CTS, and bilateral tendonitis of the shoulders. She would need the ability to alternate between sitting, standing, and walking every 20 minutes for up to 9 minutes. She could occasionally use her right hand and less than occasionally use her left hand, occasionally bend and reach, and less than occasionally stoop. Her impairments would result in, cause, or contribute to headaches or mental fatigue more than four times per month and would cause the claimant to need to rest for greater than two hours. She would miss work due to her medical condition 2-3 days per month. She noted the claimant had multiple mild and moderate conditions that when combined caused her to have significant functional impairment. (Exhibit 24F). The undersigned considered the opinions of Dr. Gordon finding it [sic] inconsistent with the objective medical evidence of record including physical examinations and diagnostic imaging contained herein showing many unremarkable physical examinations. (Exhibits 2F/22; 4F/16, 19, 22; 6F/9, 28, 52; 7F/8; 12F/33, 39, 47, 48, 49-50, 53, 58; 13F/22, 24, 28, 34; 20F/32; 25F/78, 80; 27F/12, 17, 24; 28F/4; 29F/7; 39F/81, 122, 159; 41F/4; 44F/3). Likewise, the treatment records from Dr. Gordon do not support the level of restriction opined including the statement that the claimant's impairments precluded full time work. The limitations opined are internally inconsistent with the objective findings contained in Dr. Gordon's treatment records. (Exhibits 25F/78, 39F/132, 143, 159). Thus, the undersigned finds the opinion of Dr. Gordon to be unpersuasive.

(Doc. 8-3 at 50). Contrary to Plaintiff's assertion that the ALJ failed to conduct a proper consistency and supportability analysis, the ALJ clearly cites numerous exhibits to support her finding that Plaintiff had unremarkable physical examinations that are inconsistent with

- 11 -

the extreme limitations given by Dr. Gordon. The ALJ cites to specific pages of the exhibits which the Court has reviewed. As explained by the ALJ, these exhibits show numerous unremarkable physical examinations that are inconsistent with the highly restrictive limitations given by Dr. Gordon. As for supportability, the ALJ remarked that Dr. Gordon's limitations are inconsistent with her own objective findings in her treatment records. Upon review of Dr. Gordon's treatment records cited by the ALJ, the Court agrees that the mostly normal objective findings in these records from the same time period conflict with the limitations given by Dr. Gordon. Thus, the ALJ properly considered the supportability and consistency factors in her discounting of Dr. Gordon's opinion, and she supported her analysis with substantial evidence.

### ii. Dr. Perry

Like Dr. Gordon, Plaintiff argues that the ALJ erred in rejecting Dr. Perry's opinion because the ALJ "did not sufficiently explain what in [Dr. Perry's] treatment records was inconsistent or failed to support" Dr. Perry's findings. (Doc. 12 at 12). Again, Plaintiff argues that the ALJ ignored findings consistent with the assessed limitations of Dr. Perry. (*Id.*)

Defendant responds that the ALJ properly considered the supportability and consistency factors by finding Dr. Perry's conclusions at odds with her own treatment notes and other physical examinations which yielded normal findings. (Doc. 16 at 4–9).

The ALJ conducted the following analysis pertaining to Dr. Perry's opinion:

> Jennifer Perry, M.D. completed a medical assessment of ability to perform physical work-related activities December 10, 2019. She opined that the claimant's impairments precluded an eight hour workday. She could lift and carry less than 10 pounds; stand and walk for less than two hours and sit for less than two hours in an eight-hour workday. She has chronic shoulder low back, and knee pain. She would need the ability to alternate between sitting, standing, and walking every 20 minutes for up to 4 minutes. She could less than occasionally use her hands and reach and occasionally bend and reach. She would miss work due to her medical condition 2-3 days per month. She reported she had not provided treatment or supervised treatment to the claimant. (Exhibit 9F).

> Jennifer Perry, M.D. completed a medical assessment of ability to perform physical work-related activities on September 20, 2020. She opined that the claimant's impairments precluded an eight hour workday. She could lift and carry less than 10 pounds; stand and walk for less than two hours and sit for less than two hours in an eight-hour workday. She has chronic shoulder low back, and knee pain. She would need the ability to alternate between sitting, standing, and walking every 20 minutes for up to 15 minutes. She could occasionally use her hands and less than occasionally bend, reach, and stoop. Her impairments cause severe cognitive or pace limitations and would limit the completion of more than 1 or 2 step job duties over an eight-hour workday. Her impairments would result in, cause, or contribute to headaches or mental fatigue more than four times per month and would cause the claimant to need to rest for greater than two hours. She would miss work due to her medical condition 1 day per month. (Exhibit 31F). The undersigned considered the opinions of Dr. Perry at Exhibits 9F and 31F finding them inconsistent with the objective medical evidence of record including physical examinations and diagnostic imaging contained herein showing many unremarkable physical examinations. (Exhibits 2F/22; 4F/16, 19, 22; 6F/9, 28, 52; 7F/8; 12F/33, 39, 47, 48, 49-50, 53, 58; 13F/22, 24, 28, 34; 20F/32; 25F/78, 80; 27F/12, 17, 24; 28F/4; 29F/7; 39F/81, 122, 159; 41F/4; 44F/3). Likewise, the treatment records from Dr. Perry do not support the level of restrictions opined including the statement that the claimant's impairments precluded full time work. This conclusion is internally inconsistent with the objective findings contained in Dr. Perry's treatment records. (Exhibits 12F/6; 13F/47; 30F/9). Thus, the undersigned finds the opinion of Dr. Perry to be unpersuasive.

(Doc. 8-3 at 48–49). As with Dr. Gordon's opinion, the ALJ cites numerous specific exhibits to support her finding that Plaintiff had numerous normal physical examinations at odds with the limitations given by Dr. Perry. Plaintiff makes much of the ALJ using the same citations for normal physical findings for both doctors, but the similarity of the citations does not impact the underlying inconsistency between both doctors' limitations and relevant objective normal physical examinations from the same time period. And again, similar to the analysis of Dr. Gordon, Dr. Perry's limitations are not supported by her own physical examinations, as evidenced in the exhibits cited by the ALJ. Thus, the ALJ properly considered the supportability and consistency factors in her discounting of Dr. Perry's opinion, and she supported her analysis with substantial evidence. The Court

finds there was substantial evidence to support the ALJ's finding that Plaintiff is not disabled as defined by the Social Security Act.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 1st day of April, 2024.

James A. Teilborg
Senior United States District Judge